Bertraud v. Kilolo Kijakazi Good morning, Your Honors. May it please the Court, Elaine Klintz on behalf of the Acting Commissioner of Social Security. I would like to begin by clarifying what the agency's and the ALJ's duties here are in developing the record. The regulations in Section 1512 set out a shared responsibility to gather evidence. So under Subsection B, the agency has the responsibility to develop a complete medical record, which the regulations define as a medical record for at least 12 months preceding the date of the application. The regulations then very clearly shift the burden onto the claimant to provide any updated medical evidence. Under Subsection A, the regulations state that the claimant must inform the agency about or submit all evidence known to the claimant that relates to whether or not the claimant is disabled, and the duty is ongoing and requires the claimant to disclose any additional related evidence about which the claimant becomes aware. Ms. Klintz, can I ask you to address the point in the plaintiff's reply brief on page 12? In the middle of the page, he says, the SSA website provides the form following cover page instructions. You do not need to ask doctors or hospitals for any medical records that you do not already have. With your permission, we will request your records. The information that you give us on this report tells us where to request your medical and other records. So that form and the instructions in that form do not alter the regulatory burden in any way. What that form is saying is that it's filled out right at the beginning of the application process as an information gathering tool. And the form says, if you tell us what your medical sources are at this time, we will request that evidence. And that is what the regulations say under Subsection B. We will gather the medical evidence for the 12 months preceding the date of the application. But there is nothing on that form that says, going forward, we're going to continue carrying that burden for you. Now, separate from the regulations, cases have recognized the non-adversarial nature of the Social Security system, and they have created a limited expansion of this duty to develop the record. This is almost exclusively applied to unrepresented claimants or those with severe mental impairments or cognitive disabilities who are not able to develop the record on their own. The facts of this case do not create that sort of heightened burden for the ALJ to develop the record. Not only did Berteau have an attorney here, he had hired that attorney more than four years before the date of this last ALJ hearing and decision. This case had been remanded by the Appeals Council twice, and after both remands, Berteau's attorney updated the medical record. And significantly, the ALJ asked the attorney if the record was complete, if he had had a chance to review the record, and the attorney said, the record is complete to the best of my knowledge. Under these facts, there are no special circumstances that would enhance the ALJ's duty, and there is no question here that the agency satisfied its duty under the regulations to develop this record. So the court's review of this case can end at the duty question and find that the ALJ satisfied the duty to develop the record, and no further inquiry is necessary. Turning briefly to the second question, if the court does reach the question of prejudice, a review of the supplemental record shows that there is nothing in this record that was reasonably likely to change the outcome of the ALJ's decision. As we laid out in our brief, these records are often duplicative, and they show Berteau making the same subjective symptom complaints that he made throughout the original record. There are no objective findings or new treatment that would corroborate Berteau's subjective complaints, and significantly, as we pointed out, these supplemental records show that Berteau performed a much wider range of daily activities than he had originally testified to. In addition to the surfing, we have records showing that he was boxing and jump roping, and five months after the decision was issued, Berteau told his physical therapist that he was helping a friend move furniture upstairs with no issue. So here, because the ALJ took all necessary steps to develop the record, and because Berteau has not demonstrated that the supplemental record was reasonably likely to call into question any of the ALJ's findings, if the court has no further questions. I actually do. Let me start with, it's actually relevant for both sides, but we had other things to talk about with Mr. Duncan. Why is everybody citing so many non-precedential orders of this court as if they were precedents? Because there is very few published case law on this issue. Well, the way you make that point is to make that point explicitly, maybe drop a footnote to some non-precedential orders if you can't resist the temptation, and then to invite us to issue a precedential opinion on the subject. What's your best Seventh Circuit precedent on the scope of the ALJ's duty to develop the record from your point of view? The closest published case we have here is Johnson v. Barnhart. That was the 2006 case where the court found that an ALJ was entitled to rely on the statement from a pro se claimant that there were no outstanding medical records. The court found there that even a pro se litigant bears some responsibility for making a record, and I think the reasonable expansion of that case, the reasonable next step, would be that a claimant who is represented by an attorney bears even a greater responsibility for making the record, and the ALJ is more entitled to rely on the representations of an attorney. So it sounds like there's still a duty on the part of the ALJ, right? So there's no regulatory duty. What we're arguing is under the facts of this case, there was no greater duty at the hearing for the ALJ to step in and develop the record at all. We're not asking for any sort of bright line rule, and I don't think we need to reach the question of a bright line rule. I think the facts here lay out pretty clearly that the ALJ's actions were reasonable in relying on the representations of the attorney. Even with the five-year gap? Yes. I think it's also important to keep in mind the nature of Berto's impairment here. I think saying five-year gap, saying 800 pages of medical records sounds bad, but if you look at the record that was before the ALJ, he had this injury in 2013, and then two and a half years of no answers. And he's reporting all of the same symptoms, and no one is able to tell him what's happening. And at the second hearing and the third hearing, Berto says, my impairment has not changed over the past five years. At the second hearing, he said he's not seeing Dr. Sherrill monthly anymore. He's not taking any medications. He's not treating his migraines in any way. And he was not receiving any mental health treatment. So you have Berto's testimony that nothing has changed. I'm not receiving any treatment. So a five-year gap doesn't sound unreasonable under those specific circumstances. The court has no further questions. We will rest on our brief and ask that you affirm the ALJ's decision. Thank you. Thank you very much. The case is taken under advisement.